Herbert, J.
The question presented, in this appeal is whether, upon consideration of the record, the order is unlawful or unreasonable.
The findings by the commission in its order of March 19, 1958, that public convenience and necessity existed for the granting of the application of McKim for authority to transport household goods, office furniture and fixtures over irregular routes from and to points in Guernsey County, that the service of Marks, the protestant, was deficient in certain particulars, and that the other motor transportation companies should improve their service by maintaining moving-van equipment and competent employees and furnishing 48-hour service to the general public in the county, were determinations of factual matters statutorily committed to the commission, reviewable upon rehearing application and also on appeal here. There is no claim that these findings were unsupported by evidence.
Opportunity was given the protestant Marks and the other irregular-route certificate holders to improve or commence services in the territory within 60 days as required by Section 4921.12, Revised Code. The order so far as it affected Marks did not require him to increase the amount of van equipment being used and he did not add any motive equipment during the 60-day period. However, his compliance with the order was approved by the commission following the 60-day period and *428 his certificate was not disturbed. The following excerpt from the finding and order made by a majority of the commission dated June 19, 1959, is pertinent and persuasive:
“Accordingly, it is to be noted that, precedent to authorizing the issuance of the new certificated authority for which the public need was manifested, the commission promulgated the statutorily prescribed ‘sixty-day orders’ affording a reasonable opportunity to improve their service to all motor carriers who held like authority in the area, not just to those carriers who entered appearances as protestants at the initial public hearing upon the application for new authority. This latter factor, which is applicable generally to all applications for certificated authority, may well be said to be of controlling effect in tMs case.
“Historically, as many as three household goods certificates authorizing service in the Cambridge area had been authorized by the commission. For various reasons, not specifically delineated in this record, two of the holders of such certificates of convenience and necessity have seen fit to cease transporting household goods. This was done without prior notice to or the authorization of this commission. Hence, despite the fact that public convenience and necessity had been previously found to exist for three (3) household goods carriers, protestant Marks was at the time of the public hearing herein the only motor carrier actively engaged in transporting household goods in the area. Nonetheless, in addition to protestant Marks, two other motor carriers actually held certificated authority to transport household goods which, under aforecited Section 4921.12, entitled such carriers to service of the ‘sixty-day’ orders and afforded each of these carriers, in addition to Marks, an opportunity to meet the public need found to exist.
“The corrective order of March 19, 1958, was, in effect, a two-part order: One portion of that order was directed specifically to protestant Marks, who had appeared and testified at the public hearing, which portion of the order was designed primarily to correct specific service impediments evinced upon the record to exist in the service rendered by Marks; the second portion of that order is admittedly more general in its terms, *429 and is specifically addressed to the other two (2) carriers who did not appear at the original public hearing or at the subsequently convened compliance hearing.
“The primary function of the order of March 1958 was, of course, to assure that the total public need would be satisfied. Thus, it follows that the two sets of corrective provisions found in that order must be read together with a view to satisfying that total need because the order necessarily pertained to the aggregate public need in the area. Satisfaction of that aggregate public need for household transportation services, and a concomitant compliance with the order, would not appear to be effectuated if but one segment thereof has been complied with.
“The record indicates that protestant Marks has, for the most part, complied with those portions of the order directed specifically to him; however, the record is void of any showing that the other carriers made any effort to comply with the second portion of the order directed to them. For example, in the second portion of its order the commission required the nonprotesting carriers to ‘maintain moving vans for the purpose of transporting household goods.’ None did. Protestant Marks added no new equipment, but the commission’s ‘sixty-day’ order did not require Marks to secure additional vans if existing equipment and services were improved as specified. However, the order provides expressly for the addition of more van equipment in the area; since none was added, there has not been compliance to meet the public needs. Although protestant Marks was not ordered specifically to add vans, it might well be' argued that, had he done so, compliance to meet extant needs would have been shown.
“The purpose of the instant ‘sixty-day’ order and all such orders is to rectify the service deficiencies spelled out therein. If the evidence fails to manifest the correction of the service deficiencies, compliance is not effected regardless of the diligence and compliance of a particular carrier in response to that portion of an order directed to specific impediments in said carrier’s service. Accordingly, the commission is unable to concur in the statement of its examiner to the effect that:
“ ‘The sole question for determination in the present proceeding is whether or not the protestant has complied with the provisions of this sixty-day order.’
*430 “Rather, the commission concurs with the contention of the applicant, as set forth in its filed exceptions, to the effect that the issue is whether or not the corrective action of all carriers ordered to effectuate service improvements has met the public need, as defined by this commission’s order of March 19, 1958. In the commission’s opinion, this would appear to be the fundamental distinction determinative of the instant case. Stated in another fashion, did compliance by protestant Marks with those aspects of the commission’s corrective order directed specifically to impediments in his service satisfy the total requirements of the shipping and receiving public.
“Protestant Marks introduced evidence at the compliance hearing to the effect that he had satisfactorily met all demands upon him for service, subsequent to the issuance of the ‘sixty-day order,’ and, thus, attempted to show impliedly that no additional van equipment was actually needed. It may be inferred that this is a converse way of attempting at this stage in the proceedings to attack collaterally the substantive provisions of the corrective order of March 19, 1958. The public need is measured as of the date of the initial public hearing upon an application. In fact, at such hearing, public need is necessarily the ‘keystone.’ It is that need, as measured by the record of such initial hearing, which the existing carriers are required to meet.
“Furthermore, any carrier aggrieved by the substantive provisions of the order of May 19, 1958, is availed the remedy by law of an application for rehearing. None was filed in this case. [The record shows that such an application was filed April 18, 1958, application denied April 28, 1958, and no appeal taken.] Accordingly, the issue now is not the propriety of the provisions of the order of March 19, 1958; but, whether or not there has been a full compliance with its terms. This commission has held on innumerable occasions that it will not reopen or retry the issue of public need in a subsequently held ‘compliance’ hearing. See Avellone, d. b. a. Avellone Transfer & Storage Co., v. Public Utilities Commission, 169 Ohio St., 241.
“This case would appear to reaffirm the efficacy of such policy. Transportation of household goods is a seasonal business subject to peaks and valleys of service demand. To retry *431 the issue of public need at a time of a compliance hearing might well mean predicating the determination upon different facts. Moreover, such proceedings could be continued on a seemingly interminable basis, it is submitted that it is preferable to rely instead upon the evidence of need as the same is developed at the original hearing where such need is the very issue in the case.
“To hold otherwise unduly burdens this commission, requiring it again to reconsider and re-evaluate evidence of public need already considered. It unduly burdens the applicant, requiring him to twice assume the burden of proof and twice to show a public need for his service. Most important of all, to hold otherwise unduly prejudices shippers and receivers of freight, necessitating that they attend two or more hearings instead of one, and making it increasingly difficult for them to receive a service adequate to their reasonable needs. This is especially true, of course, in household proceedings wherein the public witnesses are individual persons rather than traffic managers representing business enterprises.
“For the reasons set forth in this discussion, the commission finds that it cannot concur fully with the report of its attorney-examiner. It finds further that there has been a failure of compliance on the part of the existing carriers with regard to the provisions of this commission’s order of March 19, 1958.”
As to the two statutes referred to in the dissenting opinion, the writer fails to see wherein the commission has failed in the slightest respect to fully comply with the requirements of Section 4921.12, Revised Code, relating to a motor transportation company over an irregular route. The pertinent portions of Section 4921.10, Revised Code, provide:
“The commission may, after notice and hearing, when the applicant requests a certificate to serve in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the commission, grant a certificate only when the existing motor transportation company or companies serving such territory do not provide the service required or the particular kind of equipment necessary to furnish such service to the satisfaction of the commission * * *.
*432 “* * * On a finding of the commission that any motor transportation company docs not give convenient and necessary service in accordance with the order of snch commission, such motor transportation company shall be given a reasonable time, not less than 60 days, to provide such service before any existing certificate is canceled or a new certificate granted over the route or for the territory mentioned in the finding and order of, or hearing before, the commission.”
Pursuant to these provisions, the last sentence of the order of the commission quoted above that “there has been a failure of compliance on the part of the existing carriers with regard to the provisions of this commission’s order of March 19, 1958” is sufficient to establish the finding required before a certificate may be issued under this section. We find no mandatory language in this section requiring cancellation of the certificates of noncomplying certificate holders prior to the granting of a certificate such as sought here and, in fact, do not consider such a question to be at issue before us.
On the record in this case, the court finds the order of the commission to be neither unreasonable nor unlawful, and it is, therefore, affirmed.

Order affirmed.

Weygandt, C. J., Zimmerman, Matthias and Bell, JJ., concur.
Taft, J., dissents.
O’Neill, J., not participating.